Donna Loyce CAMP *v.*
FIRST FEDERAL SAVINGS AND LOAN and
SULLIVANT CROSS REALTY, INC.

CA 83-427 671 S.W.2d 213

Court of Appeals of Arkansas
Division II
Opinion delivered July 5, 1984

*Gibson & Gibson, P.A.,* by: *R. Bynum Gibson,* for appellant.

*Ramsey, Cox, Lile, Bridgeforth, Gilbert, Harrelson & Starling,* by: *Rick Ramsay, Alan Humphries, R.T. Beard. III,* and *Mark Chadick,* for appellee First Federal Savings & Loan.

*Bridges, Young, Matthews, Holmes & Drake,* for Sullivant Cross Realty, Inc.

LAWSON CLONINGER, Judge. This case is an appeal of directed verdicts in an action based on fraud and deceit. The primary issue is whether appellant made a *prima facie* case of misrepresentation against appellees First Federal Savings and Loan (now First South) and Sullivant Cross Realty, Inc. At trial, appellant recovered from Mr. & Mrs. J. D. Roberts for breach of implied warranty of habitability, but the trial judge directed verdicts in favor of First Federal and Sullivant Cross on the basis that appellant failed to sustain her burden of proof on the elements of fraud. Appellant now contends that the trial court's actions were error because fact questions were presented concerning First Federal's alleged duty to disclose information and Sullivant Cross's representations.

The Arkansas Supreme Court has adopted from Prosser, *Law of Torts* (4th Ed. 1971), at 685, a statement of the elements of the tort cause of action in deceit:

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false — or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of 'scienter.'

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance.

*MFA Mutual Ins. Co.* v. *Keller,* 274 Ark. 281, 623 S.W.2d 841 (1981); *Beam* v. *Monsanto Co., Inc.,* 259 Ark. 253, 532 S.W.2d 175 (1976). Appellant argues that each of the above elements is applicable to the facts of the present case with regard to both appellees.

Although we do not address the substantive merits of appellant's claim, we must determine whether the proof, viewed in the light most favorable to appellant, could have presented a question of fact for the jury had a directed verdict not been granted. *Henley's Wholesale Meats, Inc.* v. *Walt Bennett Ford, Inc.,* 4 Ark. App. 362, 631 S.W.2d 316 (1982); *Ralston Purina Company* v. *McCollum,* 271 Ark. 840, 611 S.W.2d 201 (Ark. App. 1981). The trial court has a duty, when requested to render a directed verdict, to consider whether the evidence against whom the verdict is directed, when given its strongest probative force, presents a *prima facie* case; only if the evidence viewed in that light, would require the setting aside of a jury verdict should a trial court grant a motion for directed verdict. *Henley's Wholesale*

*Meats, Inc.* v. *Walt Bennett Ford, Inc., supra.* We find, on the basis of the facts set forth in the record, that a *prima facie* case was made against appellees Sullivant Cross, Inc., and First Federal Savings and Loan. We therefore reverse the decision of the trial court with respect to both appellees.

Appellant purchased a newly constructed house from J. D. Roberts, a builder, who had borrowed construction money from First Federal. Sullivant Cross was the real estate agency with which Mr. Roberts and his wife had entered into an exclusive-listing contract to sell the property. Appellant signed an offer and acceptance in the office of Sullivant Cross and tendered earnest money. A little more than a week later, appellant paid the balance of the purchase price in a First Federal office. Between the time of the purchase and the trial, the house and surrounding realty were flooded three times.

In her action for deceit, appellant alleged that Sullivant Cross represented to her that the property was not located in a designated flood area. She contended that she relied upon these representations throughout the transaction and suffered damages in consequence. Appellant did not argue that First Federal actively made false representations to her but instead insisted that First Federal owed her a duty to disclose the information that the property was located in a flood area.

A question of fact appears to have been presented with respect to Sullivant Cross. Appellant testified that at the closing of the sale she stated that she was purchasing the property on the condition that it would not flood. She further testified that a representative of Sullivant Cross assured her at that time that the real estate was not in a flood area. It is her contention that a survey depicting the flood stage on the lot in question was known to representatives of Sullivant Cross and that this indicates that statements made by them were knowingly false. We agree that appellant presented a question of fact for the jury's consideration. In finding that a *prima facie* case was established against Sullivant Cross, we do not hold that appellant was entitled to recover from the real estate agency; rather, we simply find that she is entitled to submit her case against Sullivant Cross to a jury.

Appellant's contention that First Federal owed her a duty to disclose information on the potential for flooding demands closer scrutiny. First Federal maintains that no confidential relationship existed between it and appellant. The institution had merely loaned construction money to J. D. Roberts and to that extent had an interest in the transaction, but, it claims, apart from offering the use of its offices for completion of the transaction and having representatives present to see that its loan was repaid by Roberts, it had no direct connection with appellant.

Appellant cites 37 Am.Jur.2d, *Fraud and Deceit*, § 146, for the general rule that "there are times and occasions when the law imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge" and failure to speak "is actually equivalent to a fraudulent concealment and amounts to fraud just as much as an affirmative falsehood." As the Arkansas Supreme Court has noted, however, in *Berkeley Pump Co. v. Reed-Joseph Land Co.,* 279 Ark. 384, 397, 653 S.W.2d 128 (1983), this rule is applicable only under "special circumstances. . . such as a confidential relationship." The question thus is whether there was sufficient evidence for a jury's consideration of a confidential or other similar relationship. It is significant that the Court did not limit the circumstances under which a duty to speak exists to a confidential relationship but left open-ended the nature of the connection between the parties. What is of greater importance, therefore, in determining whether a directed verdict was improper in this instance is for us to make an examination of what the Court termed "special circumstances" rather than an effort to fit the facts of the case to that narrower example, a confidential relationship.

Appellant directs our attention to the following passage from 37 Am. Jur. 2d, *Fraud and Deceit,* § 146, which helps to define the extent of the question:

> [T]he law does not, except in broad terms, attempt to define the occasions when a duty to speak arises. On the contrary, there has been adopted, as a leading principle, the proposition that whether a duty to speak

exists is determinable by reference to all the circumstances of the case, and by comparing the facts not disclosed with the object and end sought by the contracting parties. The difficulty is not so much in stating the general principles of law, which are fairly well understood, as in applying the law to particular groups of facts.

In the light of this language and that of *Berkeley Pump, supra,* we hold that the circumstances suggest a relationship between First Federal and appellant substantial enough to warrant the trial court's submitting the question of whether there was a duty to speak to a jury.

First Federal had a pecuniary interest in the sale and stood to gain by it. The institution made its offices availabe for the conclusion of the transaction and had representatives present to protect its own interest in the contract. Without speculating on the underlying reasons for First Federal's silence, we can conclude that the circumstances indicate that the repayment of the institution's loan was a matter of no small importance to its officials.

First Federal acknowledges as much, and yet places emphasis on the fact that, strictly speaking, there was no confidential relationship between it and appellant. The Arkansas Supreme Court held, however, in *Hanson Motor Co.* v. *Young,* 223 Ark. 191, 265 S.W.2d 501 (1954) that:

> The duty of disclosure . . . arises where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not.

In the present case, appellant's testimony revealed that she had moved recently from a less flood-prone part of the state, and had relied considerably upon the integrity of First Federal throughout the negotiations. We believe that a jury should have had the opportunity to weigh these factors in deciding whether or not First Federal owed appellant a duty to speak.

The trial court refused to allow appellant to testify further on her reliance on First Federal's integrity on the grounds that she had no contractual relationship with the institution. In view of our holding with respect to First Federal, we find error in that decision of the court.

Reversed and remanded for further proceedings not inconsistent with this opinion.

CRACRAFT and COOPER, JJ., agree.